NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOSE TOMAS MORENO, JR., *Appellant.*

No. 1 CA-CR 15-0439
FILED 7-5-2016

Appeal from the Superior Court in Maricopa County
No. CR2014-002199-001
The Honorable Brian Kaiser, Commissioner

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

Franklin & Associates, P.A., Tempe
By Colby Kanouse, Charles P. Franklin
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Patricia K. Norris delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Kenton D. Jones joined.

---

**N O R R I S**, Judge:

¶1        A jury convicted Jose Tomas Moreno, Jr. of one count of aggravated driving or actual physical control while under the influence of intoxicating liquor or drugs, and one count of aggravated driving or actual physical control while under the influence of intoxicating liquor (alcohol concentration of 0.08 or more within two hours of driving), under Arizona Revised Statutes ("A.R.S.") section 28-1383(A)(1) (Supp. 2015),[1] both class four felonies. On appeal, Moreno argues the superior court should have suppressed his statement to police that he had been driving. Even if we assume the superior court should have suppressed this statement, its admission was harmless error. We therefore affirm his convictions and sentences.

### FACTS AND PROCEDURAL BACKGROUND

¶2        On April 5, 2014, Moreno was drinking at the house of C.B. Later that day Moreno asked her for the keys to her car, but she would not give them to him. Moreno asked another person at the house, B.B., for a ride, but instead B.B. gave Moreno the keys to his white truck. At some point Moreno left the house, although neither C.B. nor B.B. saw him leave or drive that night. After Moreno left, police were dispatched to the house. C.B. gave Officer T.O. a physical description of Moreno, said he was wearing a yellow shirt, and stated the likely direction he was heading.

¶3        Sometime later, Officer G.M. saw a white truck pull into a convenience store and park at the gas pump. Although Officer G.M. could not see the driver, he saw someone wearing a yellow shirt "standing on the driver's side door outside the" truck. Officer G.M. ran the truck's license plate confirming it was registered to B.B. Officer G.M. then saw the person, who he later identified in court as Moreno, walk from the truck into the

---

[1]We cite to the current version of all statutes in this decision because the Arizona Legislature has not made any amendments to these statutes since the date of Moreno's offenses.

convenience store and then back towards the truck. Officers arrested Moreno in the parking lot and then Officer D.G. viewed the convenience store surveillance video. The video showed a man in a yellow shirt walking away from the truck, entering the convenience store, and purchasing items. After viewing the video, Officer D.G. opened the door of the police car in which Moreno was sitting and confirmed "the person that was in custody matched the clothing description and physical characteristics" of the person he "saw on the video." Officer D.G. "also smelled the odor of alcohol coming from inside the patrol vehicle."

¶4　　　　Police transported Moreno to the police station. There, he admitted to driving the truck and submitted to a breathalyzer test. The test results showed Moreno's blood alcohol concentration exceeded 0.08.

¶5　　　　Before trial Moreno moved to suppress the "incriminating statements" he had made to Officer D.G. at the station, which, he argued, were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The superior court denied Moreno's motion before the start of trial.

## DISCUSSION

¶6　　　　On appeal, Moreno argues, under *Miranda*, the superior court should have suppressed "the admissions that he made to Officer [D.G.] about driving the vehicle seen at the gas station." Even assuming a *Miranda* violation, any error in the admission of his statement was harmless because, based on our review of the record, it did not contribute to or affect the verdict. *See State v. Valverde*, 220 Ariz. 582, 585, ¶ 11, 208 P.3d 233, 236 (2009) (error is harmless "if the state, in light of all of the evidence, can establish beyond a reasonable doubt that the error did not contribute to or affect the verdict") (quotations and citations omitted); *State v. Montes*, 136 Ariz. 491, 497, 667 P.2d 191, 197 (1983) ("Statements obtained without the benefit of *Miranda* warnings, unlawful but not involuntary, are subject to the harmless error rule.") (citation omitted).

¶7　　　　Here, aside from Moreno's statement, the State, through the testimony of several witnesses, presented substantial circumstantial evidence Moreno had driven the truck to the convenience store. *See Lohse v. Faultner*, 176 Ariz. 253, 259, 860 P.2d 1306, 1312 (App. 1992) ("direct and circumstantial evidence have equal probative worth" in civil and criminal cases). In addition to the evidence summarized above, *see supra* ¶¶ 2-4, B.B. testified that, after giving Moreno his keys, the next time he saw his truck was when he picked it up at the convenience store parking lot where

officers had arrested Moreno the previous night. Further, Officer G.M. testified that, in addition to seeing Moreno standing next to the driver's side door, he did not see anyone else inside the truck, anyone open the passenger door, or anyone hand the truck keys to Moreno. He did, however, see another officer take the truck keys from Moreno after police had taken him into custody, and that officer used those same keys to move the truck from the gas pump to a parking spot.

¶8     The State also presented substantial uncontested evidence that Moreno was under the influence of alcohol when officers took him into custody. *Miranda* bars illegally obtained "testimonial or communicative" evidence, but not physical evidence. *See State v. Lee*, 184 Ariz. 230, 233, 908 P.2d 44, 47 (App. 1995). Officer D.G. testified that, at the station, Moreno exhibited physical signs of intoxication, including red watery eyes, delayed movements, and slurred speech. Additionally, an intoxilyzer test revealed that Moreno had a blood alcohol concentration greater than 0.08. *See* A.R.S. § 28-1383(A)(1) (person is guilty of aggravated driving or actual physical control while under the influence if he or she violates A.R.S. § 28-1381); A.R.S. § 28-1381(A)(2) (2012) (criminalizing alcohol concentration of 0.08 or more within two hours of driving).

¶9     In short, based on our review of the record, we can say, beyond a reasonable doubt, that any error in the superior court's admission of Moreno's statement that he had driven the truck did not contribute to or affect the jury's verdict.

## CONCLUSION

¶10    For the foregoing reasons, we affirm Moreno's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: AA